Scott v. Flowers.

## F. W. SCOTT V. SARAH JANE FLOWERS.

FILED NOVEMBER 8, 1900.    No. 9,963.

1. **Industrial School:** CONSTITUTIONAL LAW: STATUTE. Section 12, article 8, of the constitution, which declares that "The legislature may provide by law for the establishment of a school or schools for the safe keeping, education, employment and reformation of all children under the age of sixteen years, who for want of proper parental care, or other cause, are growing up in mendicancy or crime," is a limitation on the power of the legislature, and section 5, article 1, chapter 75, of the Compiled Statutes, to the extent that it prescribes an age greater than that fixed in the constitution for such commitment, is unconstitutional and void.

2. **Language of Statute:** MEANING OF CONSTITUTION. A youth who is incorrigible is "growing up in crime," within the meaning of that term as employed in said section of the constitution, and a statute prescribing for the commitment of incorrigible youths to the reform school is not, for that reason, contrary to the terms of said section.

3. **Sufficiency of Complaint:** FALSE IMPRISONMENT. A complaint filed in the county court under said section 5, article 1, chapter 75, charging no crime, but incorrigibility merely, states no cause for commitment to the industrial or reform school, and a person so arrested and committed has a cause of action against the person filing the same, for false imprisonment.

4. **Joint Tort-Feasors:** LIABILITY. Joint tort-feasors are jointly and severally liable for their wrongful acts.

5. **Action:** FALSE IMPRISONMENT: MALICIOUS PROSECUTION: JOINDER: A cause of action for false imprisonment may be joined in the same petition with a cause of action for malicious prosecution when both arose out of one and the same transaction.

6. ——: ——: EVIDENCE: NEWSPAPER PUBLICATIONS. In an action for false imprisonment, plaintiff may prove newspaper publications containing an account of his arrest and imprisonment, without comment thereon.

7. **Error: Evidence.** Error can not be successfully predicated upon the admission of testimony, where the same line of testimony has been received in the cause without objection.

8. **Instruction: Withdrawal of Evidence: Cure of Error.** The withdrawal of evidence from the consideration of the jury by an instruction cures any error in the admission.

ERROR to the district court for Lancaster county. Tried below before CORNISH, J. *Affirmed.*

*Wolfenbarger & Williams,* for plaintiff in error:

It is claimed by the defendant in error that the act creating the Girls' Industrial School at Geneva is unconstitutional. This position is untenable. As has been often repeated, all acts of the legislature are presumed to be constitutional, and no act will be declared invalid unless plainly and irreconcilably in conflict with the constitution. Sutherland, Statutory Construction [1891 ed.], sec. 33; *State v. Van Duyn,* 24 Nebr., 586; *State v. Bemis,* 45 Nebr., 724; *Pleuler v. State,* 11 Nebr., 547; Black, Constitutional Law [1895 ed.], pp. 58, 59, sec. 28; *Tabor v. Cook,* 15 Mich., 322.

The act establishing the Girls' Industrial School for juvenile delinquents is not in violation of section 1, article 1, constitution of Nebraska, entitled "Bill of Rights." "All persons are by nature free and independent, and have certain inherent and inalienable rights; among these are life, liberty, and the pursuit of happiness. To secure these rights, and the protection of property, governments are instituted among people, deriving their just powers from the consent of the governed." Bill of Rights, art. 1, sec. 1.

The liberty guaranteed by the constitution is not absolute and unqualified, and has never been so held by any court in this country; but it exists in proportion to wholesome restraint. Webster's Works, vol. 2, 393; Tiedeman, Limitations of Police Power [1886 ed.], sec. 30; Cooley, Constitutional Limitations [6th ed.], pp. 412-416, 704; 18 Am. & Eng. Ency. of Law [1st ed.], p. 739, "Police

Power"; Black, Constitutional Law [1895 ed.], p. 290, sec. 108; *Chicago, B. & Q. R. Co. v. State*, 47 Nebr., 549.

It is the unquestioned right and imperative duty of every enlightened government, in its character of *parens patriæ* to protect and provide for the comfort and well-being of such of its citizens, as by reason of infancy, defective understanding, or other misfortune or infirmity, are unable to take care of themselves, and all constitutional limitations must be so understood and construed as not to interfere with the proper and legitimate exercise of this important governmental function. *County of Mc-Lean v. Humphreys*, 104 Ill., 378; *Milwaukee Industrial School v. Supervisors Milwaukee County*, 40 Wis., 328; *Ex parte Crouse*, 4 Whar. [Pa.], 9; *Roth v. House of Refuge*, 31 Md., 329.

The act establishing the Girls' Industrial School for juvenile delinquents is not in violation of section 2, article 1, of the constitution. Section 2 of article 1 reads: "There shall be neither slavery nor involuntary servitude in this state, otherwise than for punishment of crime, whereof the party shall have been duly convicted." Slavery is "the condition of a slave; that civil relation in which one man has absolute power over the life, fortune and liberty of another, while penal servitude is the condition of being bound to service; the state of a person who is subjected voluntarily or otherwise to another person as his servant." Black's Law Dictionary [1891 ed.], pp. 1084, 1101. There is nothing in the law governing the Girls' Industrial School which by reasonable intendment contemplates the reduction of the inmates to either slavery or involuntary servitude.

Said act is not in violation of section 11, article 1, of the constitution, wherein it is provided: "In all criminal prosecutions the accused shall have the right to appear and defend in person or by counsel, to demand the nature and cause of accusation and to have a copy thereof; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf; and

a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." A proceeding for commitment of a girl to the industrial school for mendicancy, vagrancy, or incorrigibility can not be deemed a criminal prosecution. *Prescott v. State,* 19 Ohio St., 184; *Ex parte Ah Peen,* 51 Cal., 280; *Foley v. State,* 42 Nebr., 233.

Said girls' industrial school act is not in violation of section 6, article 1, of the constitution. "The right of trial by jury shall remain inviolate, but the legislature may authorize trial by a jury of a less number than twelve men in courts-inferior to the district court." Constitution, art. 1, sec. 6. This provision of our organic law does not create nor extend the right of trial by jury. It simply preserves the right in those cases where juries were demandable when the constitution was adopted. *Sharmer v. McIntosh,* 43 Nebr., 509; *Omaha Fire Ins. Co. v. Thompson,* 50 Nebr., 580; Proffatt, Jury Trial [1877 ed.], sec. 87; *Raymond v. Flavel,* 40 Pac. Rep. [Ore.], 158; Black, Constitutional Law [1895 ed.], pp. 446-451; *Byers v. Commonwealth,* 42 Pa. St., 89; *People v. McCarthy,* 45 How. Pr. Rep. [N. Y.], 97. In Black's Constitutional Law, above cited, pages 446 to 451, a large variety of proceedings are enumerated, wherein jury trial is unnecessary because none was required at common law. The law as to commitment of minors to industrial schools is wholly statutory. Hockheimer, Custody of Infants [2d ed.], sec. 96. The law unquestionably is that trial by jury is not essential to a valid commitment to an industrial school. Hockheimer, Custody of Infants [2d ed.], sec. 99; 6 Am. & Eng. Ency. of Law [2d ed.], p. 982; *In re Mason,* 28 Pac. Rep. [Wash.], 1025; *Farnham v. Pierce,* 141 Mass., 203; *In re Donohue,* 1 Abb. N. Cas. [N. Y.], 1; *Jarrard v. State,* 116 Ind., 98; *Wares, Petitioner,* 161 Mass., 70.

The act establishing the Girls' Industrial School is not in conflict with section 3, article 1, of the constitution, which is as follows: "No person shall be deprived of life, liberty or property, without due process of law." For

the proper interpretation of "due process of law," see *Ex parte Ah Peen*, 51 Cal., 280; *County of McLean v. Humphreys*, 104 Ill., 378; Tiedeman, Limitations of Police Power [1886 ed,], sec. 50; *Sears v. Cottrell*, 5 Mich., 250.

The act establishing the Girls' Industrial School is not in conflict with section 12, article 8, of the constitution, which follows: "The legislature may provide by law for the establishment of a school or schools for the safe keeping, education, employment and reformation of all children under the age of sixteen years, who for want of proper parental care, or other cause, are growing up in mendicancy or crime." Courts of chancery have always exercised control over minors, whatever their age, and the constitutional provision in no sense limits the power in the legislature to exercise such control through industrial school laws. On the contrary such power is confirmed.

The defendant in error can not question the validity of the law, as it applies to minors over sixteen years of age, and such question can not properly be considered in advance of a case involving the rights of a minor who comes within the age limits which must have been exceeded in the case for hearing. *Sears v. Cottrell, supra.*

*Halleck F. Rose* and *Wilmer B. Comstock, contra.*

*Halleck F. Rose:* The statute does not authorize the commitment of minors to the reformatory except upon a hearing, after notice, in which the accused is represented by a friend or specially appointed guardian. Proceedings under reformatory statutes must show that due regard was had to the rights of the minor or commitments will not be upheld. *People v. Catholic Protectory*, 38 Hun [N. Y.], 127, 101 N. Y., 195; *In re Heery*, 51 Hun [N. Y.], 372; *People v. Catholic Protectory*, 106 N. Y., 604; *Goodchild v. Foster*, 51 Mich., 599; *Ballenger v. McLain*, 54 Ga., 159.

So much of the reform school act as may be construed to permit the commitment of a girl to the reform school

until she is twenty-one years of age, for incorrigibility, not amounting to crime, in *ex parte* proceedings, is palpably and irreconcilably in conflict with section 12 of article 8 of the constitution, and therefore void.

The complaint under which Sarah Flowers was arrested and imprisoned states no legal cause for her commitment to the reform school.

Laws which are clearly unconstitutional must be so declared without reference to expediency. *Coffman v. Bank of Kentucky*, 40 Miss., 29.

The constitutional provisions have, apart from any specific negative, been held to be incorporated for the sole purpose of restraining legislative action. *Richards v. Raymond*, 92 Ill., 615; *Powell v. Board of Education*, 97 Ill., 375; *Collins v. Henderson*, 11 Bush [Ky.], 74; *Roach v. Board of Directors*, 77 Mo., 484; *Otken v. Lamkin*, 56 Miss., 758; *Gordon v. Cornes*, 47 N. Y., 608.

Constitutional provisions, except when expressly permissive, are mandatory. *Varney v. Justice*, 86 Ky., 596.

NORVAL, C. J.

In 1896 F. W. Scott filed a complaint in the county court of Lancaster county charging that Sarah Jane Flowers, a girl of fourteen years, was "incorrigible, and from lack of proper parental care and control is growing up in idleness and vice." On this complaint she was, after examination and evidence taken by the county court, committed to the industrial school for girls at Geneva; said hearing being *ex parte*. Afterwards she was released, and by her next friend, Lucretia Flowers, commenced this action in the district court of Lancaster county against said Scott for damages, setting forth in the petition two counts, one for false imprisonment, the other for malicious prosecution, the latter being taken from the jury by instructions of the court. Verdict was in her favor on said first cause of action, and judgment rendered thereon, from which said Scott prosecutes error to this court.

The principal question involved is the proper construction to be given section 12, article 8, of the constitution of this state, and this will be first considered. On the trial of the cause in the lower court the following instruction was given: "Under the constitution and laws governing in this commonwealth all persons by nature are free and entitled to their liberty. Involuntary servitude, except for punishment for crime after conviction with due process of law, is not allowed. The right of the accused to appear and defend against charges of crime, to demand the nature of the accusation against him, to meet the witnesses against him face to face, to compel witnesses to testify and to have a speedy trial by an impartial jury is guaranteed to all persons by the fundamental law of the land. These rights are guaranteed to all persons, including minors, except as limited by section 12 of article 8 of the constitution, which reads as follows: 'The legislature may provide by law for the establishment of a school or schools for the safe keeping, education and employment of all children under the age of sixteen years, who, for want of proper parental care, or other cause, are growing up in mendicancy or crime.' The prosecution complained of in this action was under an act of the legislature, which, in parts of it, oversteps the bounds of these constitutional limitations. After hearing the argument of counsel, the court holds that so much of said act as permits, or may be construed to permit, the commitment of a child to the reform school until it is twenty-one years of age for disobedience, willfulness, or incorrigibility not amounting to a crime, in an *ex parte* proceeding, is void. The complaint made by the defendant under which plaintiff was arrested charges no crime nor offense against her warranting her commitment to the girls' industrial school. The arrest and detention of plaintiff was therefore unlawful." It will be observed that the trial court ruled that the act of the legislature referred to is without the scope of the section of the constitution quoted in the instruction, in that so

much of the act as may be construed to permit the commitment of a child to the reform school for disobedience, willfulness or incorrigibility, not amounting to a crime, in an *ex parte* proceeding, is void. With all the reasons assigned by the court for so deciding, we can not agree; but should the act be unconstitutional for any other cause, the arrest and commitment of plaintiff was unlawful. We understand the term "growing up in crime," as employed in said section of the constitution, as referring, not only to a minor who is a criminal, who has been or is now committing a crime, but that it also refers to a status, a tendency in the direction of crime. The state industrial schools are reformatory institutions, not penal, in their nature, are founded and maintained by the state for the purpose of protecting society against the likelihood of children of tender years becoming criminals, should they continue in a course whose natural and probable outcome will be their becoming members of the criminal classes. Now, the complaint charged this girl with incorrigibility. Who is more likely to eventually become a criminal than a youth who is so far advanced in following his own will as to have become incorrigible, incapable of being corrected or amended, bad beyond correction, irreclaimable, by those on whom society and the laws place the duty of training him in proper conduct as a member of society? Clearly, an incorrigible youth is "growing up in crime," within the meaning of this term, taking it in its broadest sense, as was certainly intended by the framers of that section of the constitution that it should be considered. Whether any parts of the bill of rights set forth in the constitution are applicable to laws governing the procedure to be adopted concerning the commitment of incorrigible youths to the industrial schools, we will not pause to consider. Such proceedings are not, however, necessarily criminal in their nature. These institutions are not of a penal character, but are reformatory. Many who are sent there are not criminals; and even the adjudged criminals committed to them are

not consigned there for punishment merely, but rather for the purpose of reforming them.

But it is further urged that, whereas said section of the constitution provides that it is the duty of the legislature to establish schools for the safe keeping, education, etc., of all children under the age of sixteen years of the classes mentioned therein, section 5, chapter 75, Compiled Statutes, which declares that those under the age of eighteen years, being of that class, may be committed, is repugnant to said section 12, article 8, of the constitution and void. It is contended that by this clause or section of the fundamental law all limitations as to age are created, and an act overstepping that limitation in that particular is void and of no effect. If this is the proper interpretation of this section of the constitution, it is the duty of this court to so hold regardless of consequences. This section of the constitution is capable of but one of four constructions: First, it is a grant of power; second, it is merely a command to the legislature to create one or more schools for the safe keeping, education, employment and reformation of all children under the age of sixteen years of the class designated in the section, leaving it to the lawmaking body to provide for the commitment to such school not only of persons over the age of sixteen years, but of those not embraced within the class designated in the constitution; third, it was the intention of the framers of that instrument that all children under the age of sixteen, no matter what their characters or the nature of the crime they may have committed, be committed to the reform school, and punished criminally; fourth, the constitution inhibits the legislature from extending the benefits of these institutions or schools to all persons over the age of sixteen years, no matter how capable they might be of reformation. To determine which of these constructions shall obtain, it is proper not only to consider the mischief sought to be remedied, but to compare the language of the section with other provisions of the fundamental law and thus

ascertain the intention of its framers as well as the pur-
pose of the people of the state in adopting the same. One
of the objects of the section was, in one sense, the refor-
mation of those of the class designated. It could not have
been intended that all children under sixteen years, no
matter what their crime, should be committed to the re-
form school, and escape punishment for their infractions
of the Criminal Code, otherwise, even the murderer would
escape punishment, if under that age, and it would be
an absurdity to say that the framers of the constitution
intended this. It is very evident that said section can
not, in justice to society, or in view of the mischiefs from
which it might suffer, be so interpreted as to justify the
court in adopting such a construction as would inhibit
the punishment of criminals under the age of sixteen
years. So the third construction must be rejected as
being not only unreasonable, but unsound. The render-
ing of the section of the constitution that it was merely
a command to the legislature, and not a limitation, is
equally untenable. Such an interpretation would permit
the legislature to enact laws authorizing the commitment
to reform schools by it established, not only of persons of
any age, but for any causes it might deem proper. This
construction would sustain a law providing for the com-
mitment to the reform schools of persons who have
reached their majority. The statement of the proposition
shows its absurdity. That the framers of the constitution
never intended said section 12 as a command to the legis-
lature is disclosed when other sections of the funda-
mental law are considered. Section 2, article 3, of that
instrument declares: "The legislature shall provide by
law for an enumeration of the inhabitants of the state,"
etc. Section 19, same article, provides: "Each legislature
shall make appropriations for the expenses of the gov-
ernment until the expiration of the first fiscal quarter
after the adjournment of the next regular session," etc.
Section 6, article 8, the article containing the section re-
lating to reform schools, reads thus: "The legislature

shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." Section 1, article 9, provides: "The legislature shall provide such revenue as may be needful, by levying a tax by valuation," etc. In all these sections of the constitution the framers have chosen language indicative of a command, as that the legislature shall do a particular thing, while in section 12, article 8, words imparting an imperative command to the legislature are entirely wanting. Again, section 6, article 9, of the constitution declares: "The legislature may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of property, benefitted." This provision evidently is not a command to the legislature, but is rather a limitation upon the power of the lawmaking body, as are the provisions of the constitution under consideration. The word "may" in constitutions and statutes is frequently construed "shall," where such was the evident purpose of the framers. But no such meaning can be imputed to the word "may" in section 12, article 8. The constitutional provision was not a grant of power to the legislature. This is manifest, since state constitutions are not grants of authority, but limitations of power. State legislatures can exercise such powers as are not inhibited by the fundamental law. To construe the provisions in question as a grant of authority is to impute to the framers the doing of a useless and idle thing.

The first three constructions not being permissible, we are forced to the conclusion that said section of the constitution was designed and intended as a restriction upon the legislative authority. Then, if it was the purpose of the makers of the constitution, as we so conceive it to have been, that not only those who are criminals and have been convicted of crime, and are deemed capable of reformation but also those so far "growing up in crime" as to have become incorrigible may be committed to such

institution, it must be that the framers of that instrument meant that the limitation of age during which either of said classes could receive the benefit of such institutions is sixteen years, and not a greater age. Whether or not the framers of that section were wise in so fixing the age limit, it is not our province to discuss. This branch of the state government can only expound the constitution, not amend it; and it seems clear to the court that the constitution inhibits the legislature from providing for the commitment to the industrial schools of children of any class, either of an incorrigible nature or criminals in fact if beyond the age of sixteen years. For the reason that this section 5, article 1, chapter 75, of the Compiled Statutes prescribes that boys or girls under the age of eighteen years may be committed to the industrial school, it is contrary to section 12, article 8, of the constitution, and is void. Therefore, if said complaint was framed and filed under the provisions of said section 5, it did not state a cause for commitment, and the arrest and commitment of said Flowers in the proceedings had under such complaint were a nullity, and constituted false imprisonment, for which said Scott, who preferred the charges therein set forth, would be liable to her in damages. From the preceding we must not be understood as holding that a person over the age of sixteen years, who has been convicted of violating the Criminal Code may not be committed to the reform or state industrial schools. The regularity of such commitments is not questioned in this proceeding.

The same conclusion would follow, but for different reasons, if the complaint had been filed by Scott under the provisions of sections 6, 7 and 8 of said article 1, chapter 75, Compiled Statutes, which follow:

"Sec. 6. When a boy or girl of sane mind, under the age of sixteen years, shall be convicted before a justice of the peace or other inferior court, of any crime, mendicancy, vagrancy, or incorrigibility, it shall be the duty of said magistrate, before whom he or she may be con-

victed, to forthwith send such boy or girl, together with all the papers filed in his office on the subject, under the control of some officer to a judge of a court of record, who shall then issue an order to the parent or guardian of said boy or girl, or such person as may have him or her in charge, or with whom he or she last resided, or any one known to be nearly related to him or her, or if he or she be alone and friendless, then to such person as said judge may appoint to act as guardian for the purposes of the case, requiring him or her to appear at a time and place stated in said order, to show cause why said boy or girl should not be committed to the state industrial school for training and reformation.

"Sec. 7. Said order shall be served by the sheriff or other qualified officer, by delivering a copy thereof, personally, to the party to whom it is addressed, or leaving it with some person of full age at the place of residence or business of said party, and immediate return shall be made to said judge of the time and manner of such service. The fees of the sheriff or other officer under this chapter shall be the same as now allowed by law for like services.

"Sec. 8. At the time and place mentioned in said order, or at the time and place to which it may be adjourned, if the parent or guardian to whom said order may be addressed shall appear, then in his or her presence, or if he or she fails to appear, then in the presence of some competent person whom the said judge shall appoint as guardian for the purpose of the case, it shall be lawful for the said judge to proceed to take the voluntary examination of said boy or girl and to hear the statements of the party appearing for him or her, and such testimony in relation to the case as may be produced, and if upon such examination and hearing, the said judge shall be satisfied that the boy or girl is a fit subject for the state industrial school, he may commit him or her to said school by warrant."

It is true that section 6 fixes the maximum age limit at

sixteen years, the period designated in the section of the constitution which we have heretofore been considering. So that said section 6 does not contravene the fundamental law. But said section 6 and the subsequent sections of the same article prescribe a different method of procedure from that required by section 5. Under the last named section the complaint is required to be made, and the proceedings are required to be had before a court of record, while section 6 governs cases where a boy or girl under sixteen years is convicted "before a justice of the peace or other inferior court, of any crime, mendicancy, vagrancy, or incorrigibility," and such magistrate has sent the papers in the case and the accused boy or girl to a judge of a court of record, who is to hear and decide whether such boy or girl is to be committed to the state industrial school. Sarah Flowers was not proceeded against under said section 6 before a justice of the peace or other inferior court, nor convicted therein of "any crime, mendicancy, vagrancy, or incorrigibility." The proceedings which resulted in her commitment to the State Industrial School for Girls at Geneva were instituted before the county court, a court of record, hence section 5, and not section 6, governs and controls. That plaintiff was committed to the industrial school under the provisions of section 5, is conceded by counsel for defendant.

It is argued by the same counsel that the consequential loss resulting to plaintiff is not the basis of an action for false imprisonment against Scott, since, had the county court performed its duty, there would have been no false imprisonment. It is true that the court made the finding and order of commitment; but the false imprisonment would not have occurred if no complaint had been filed. Defendant instituted the proceeding which resulted in the imprisonment of the plaintiff, and he can not escape liability because some one else equally with him was guilty of the wrong. Tort-feasors are jointly and severally liable for the damages flowing from their acts. And

it is no answer to say that plaintiff has a right of action for false imprisonment against the county judge.

The court below refused to require the plaintiff to elect on which of the two causes of action stated in her petition she would go to trial, and this refusal is assigned for error. This ruling was entirely proper, since, under the Code, a cause of action for false imprisonment may be joined in the same petition with a count for malicious prosecution, as both causes of action arose out of the same transaction. Code of Civil Procedure, sec. 87; 8 Ency. Pl. & Pr., 844.

It is also insisted that plaintiff was permitted to reinstate her cause of action for malicious prosecution, after having dismissed the same. This contention we are unable to verify from the record. It does appear that counsel for plaintiff orally proposed to the court to dismiss her cause of action for malicious prosecution without prejudice, whereupon defendant asked for and insisted upon a continuance of the case; and thereupon plaintiff, to prevent a postponement of the trial, withdrew her proposal to dismiss said first cause of action. But all this did not amount to a dismissal and reinstatement of the cause of action. No order of dismissal or reinstatement was ever made by the court or entered upon its journal. Moreover, there was no recovery upon the first count of the petition. So defendant was not prejudiced by the alleged abuse of discretion by the trial court.

Newspaper accounts of the arrest and commitment of plaintiff were allowed to be introduced and read to the jury, the genuineness and authenticity of the publication and the extent to which they had been circulated having been first established. The articles in question contained mere plain statements or accounts of the arrest and commitment and were competent as affecting the question of damages. *Minneapolis Threshing Machine Co. v. Regier*, 51 Nebr., 402, 407.

The rulings of the trial court on the admission of tes-

48

timony now assailed by the unsuccessful party will not be specifically noticed. Generally, the testimony objected to consisted of a description of the Industrial School for Girls at Geneva, and an account of the restraints imposed upon plaintiff and her treatment while confined in said institution; of her being compelled to sleep with a colored girl, and of her journey from the county court to the industrial school. The evidence, in the main, was properly received as bearing on the question of damages. *Abrahams v. Cooper*, 81 Pa. St., 232; *Kindred v. Stitt*, 51 Ill., 401; *Wheeler v. Hanson*, 37 N. E. Rep. [Mass.], 382; *Filer v. Smith*, 96 Mich., 347, 355. Some testimony of doubtful propriety was received over the objection of defendant, but the error in its reception, if any, was cured by the admission of similar testimony without objection. Defendant was not prejudiced by the testimony adduced showing the release of plaintiff from the industrial school, since proof of her early discharge tended to mitigate the damages.

Fault is found with the admission of testimony tending to establish the cause of action for malicious prosecution, but defendant's rights were not jeoparded thereby, for the reason that the jury was expressly instructed to disregard such evidence in the consideration of the case, and the cause of action it was introduced to support was dismissed by the trial court. *Darner v. Daggett*, 55 Nebr., 198; *American Fire Ins. Co. v. Landfare*, 56 Nebr., 482.

We have carefully reviewed and considered the evidence, and we fail to discover that the damages awarded by the jury were excessive. A verdict for $2,500, the jury thought, would no more than compensate plaintiff for the actual injury sustained; and in this view we concur.

The judgment is

AFFIRMED.