RACHEL P. DILLON, APPELLEE, v. SEARS-ROEBUCK COMPANY ET AL., APPELLANTS.

FILED JULY 20, 1933. No. 28583.

*Ziegler & Dunn,* for appellants.

*Brome, Thomas & McGuire* and *G. H. Seig, contra.*

Heard before GOSS, C. J., GOOD, DAY and PAINE, JJ., and CHASE, LOVEL S. HASTINGS and TEWELL, District Judges.

CHASE, District Judge.

This is an action brought by plaintiff to recover dam-

ages for alleged false imprisonment. The case was tried to a jury, resulting in a verdict in favor of the plaintiff against each defendant in the sum of $3,000, for which judgment was rendered. The defendants prosecute this appeal to this court for reversal of the judgment. Numerous errors are assigned, among which is that the court erred in overruling the separate motions of each defendant for an instructed verdict.

The consideration of this question involves a very careful reading of the record. Space will not permit a detailed statement of the facts herein. Suffice it to say that from the record it appears that the plaintiff, on and prior to the 16th day of July, 1930, was employed by Sears-Roebuck Company in its retail store at Omaha, Nebraska; that on the day previous a customer came to plaintiff, who was working in the brush department, and purchased a paint brush at a price of $1.15, whereupon the plaintiff made the proper record of the purchase on the cash register. A few minutes later the same customer returned, stating that she desired to return the brush and purchase a more expensive one, finally selecting one for $2.25, paying the plaintiff the $1.10 additional. The plaintiff did not place the money in the cash register and did not complete the transaction in compliance with the rules of the store, but in her testimony she states that she laid the $1.10 on the cash register intending later to complete the transaction, and when she returned the money and slip were gone. When she came back from lunch the next day, someone had left word for her to come to the offices on the third floor, which she did. There she met a man, who afterward developed to be Mr. Behr, who was a representative of the Willmark System, a system which is employed by mercantile establishments throughout the United States to check the personnel of department stores, general stores, chain stores and retail stores for knowledge of stock, merchandise, courtesy and honesty of employees; that she went into a room with Mr. Behr, and he shut the door and asked her to explain the transaction of the day before of which

she did not report the $1.10; that she thereafter confessed in a written statement that she had taken the $1.10 with intention to appropriate it for her own uses and was ready to make it good. It also appears that he asked her about her honesty in other ways and she confessed she had been taking about $5 a day over a period of six months, and basing his statement on her own confession, another statement was prepared in which she confessed she was indebted to the store in the sum of $850 due to her misappropriation of her employer's funds during this period of time.

Plaintiff claims while in this office she was restrained of her liberty; that she wanted to call her husband, and Mr. Behr pushed the telephone away and told her if she did not make this statement he would have her arrested and sent to jail; that she was thereby restrained of her liberty and suffered damages thereby.

From the pleadings it is difficult to determine whether this action is one seeking recovery for slander or for false imprisonment, but it seems to have been tried on the theory of an action to recover damages for false imprisonment, and our disposition of the case will be confined to that theory.

The plaintiff in her testimony seeks to repudiate the statements that she made concerning these two transactions, stating that she was compelled to sign them by threat of prosecution and that they were untrue. We have searched the entire record to find any evidence where any person placed his hands upon the plaintiff, or in any manner used any physical force to restrain her liberty, and have found none. Therefore, the only basis upon which the plaintiff could predicate her recovery would be upon the theory that, under the alleged threats she claimed were made to her concerning an arrest, she would be justified in harboring a reasonable apprehension that force would be used to prevent her from leaving the room had she so desired. There is no testimony that either Sellers, the general superintendent, or Mr. Arndt,

the district manager, both of whom are defendants, had anything whatever to do with her making either statement, or made any statement to her about arrest. All this she claims was done by Mr. Behr. Her testimony stands wholly uncorroborated upon that particularly important fact of the case. The witnesses Sellers, Arndt and Behr all testify that all the facts they got concerning the $1.10 transaction, or the transaction involving the $850 statement, they got solely from the plaintiff's own confession, and neither Mr. Behr nor any other witness knew anything about any transactions involved in the $850 until the plaintiff, while in the room with Behr, confessed that she had been appropriating her employer's money during this time. The effect of plaintiff's testimony is that she was compelled by coercion and fear to sign the statements.

While this young woman was but seventeen years of age, she had reached a state of sufficient mental maturity to select a husband for herself, and her conduct would indicate intelligence generally. Her employers testified she was a very competent clerk. It is incredible to one who reads the record that a person of her intelligence would place her name to a written document confessing guilt of a crime when the statements contained therein were wholly untrue, even though she were threatened with arrest upon refusal. It appears further that the door was left open a good part of the time where plaintiff was in the office with Behr; that he went out for several minutes and the witness made no attempt to escape from her alleged imprisonment. It must be borne in mind that the plaintiff then was an employee of Sears-Roebuck Company; that she in writing confessed to an embezzlement of her employer's funds.

The courts quite uniformly adopt the rule that proprietors of business enterprises generally have a right to detain a customer a reasonable length of time to ascertain whether or not such customer has settled for goods being removed from the establishment. The plaintiff's employer

would have such a right under the circumstances of this case. Mere loss of freedom alone cannot constitute imprisonment. Life is attended by numerous limitations upon personal freedom. One who trespasses upon his neighbor's close, without his consent, can be lawfully ejected by the use of such force as is necessary to accomplish the ejectment. True, his freedom is interfered with, but he is not imprisoned. On the other hand, the trespasser would have a legal right to peacefully depart from the premises; but should the neighbor proceed, either by force or by threats from which the trespasser might harbor a reasonable apprehension that should he attempt to depart therefrom he would meet with physical resistance, such conduct on the part of the neighbor would amount to an unlawful restraint and would be actionable. The test is that there not only must be restraint, but such restraint must be exercised by compelling the restrained party to occupy a place within the limits fixed by the restraining party. In order for a restraint to amount to imprisonment, such restraint must be unlawful. There must be some actual interference with one's freedom of physical action or locomotion. This may be accomplished either by physical contact in which the restrained party's bodily strength is overpowered, or from language or gestures from which the restrained party might have a reasonable apprehension that any attempt to depart from the obnoxious surroundings would result in some aggression against his physical powers of mobility. All restraint is not unlawful, and the rule seems to be that only a wrongful restraint can be the basis of an action for false imprisonment.

"The true test seems to be, not the extent of the restraint (where the interference amounts to a restraint), but the lawfulness thereof." 11 R. C. L. 793, sec. 5.

We have carefully reviewed the decisions cited herein and many others, and generally where the courts have allowed recovery under facts similar to those of this case, the restraining party acted oppressively while under a

misapprehension of the real facts, or acted rudely and insolently in utter disregard of the facts.

The other line of cases, where courts allow recovery, is where the restraint occurs by an officer of the law unwarrantedly and wrongfully using his official authority to accomplish the restraint.

"The proprietor of a restaurant may detain a patron, who apparently has not paid for food purchased, a reasonable time to investigate the circumstances." *Jacques v. Childs Dining Hall Co.,* 26 A. L. R. 1329 (244 Mass. 438).

"Unlawful restraint of an individual's personal liberty or freedom of locomotion against his will comes within definition of 'false imprisonment.'" *Fox v. McCurnin,* 218 N. W. 499 (205 Ia. 752).

It will be observed that the right of recovery must be based upon some interference with freedom of locomotion. In *Tobin v. Bell,* 73 App. Div. (N. Y.) 41, a case presenting a situation very similar to the instant case, the court said:

"The verdict is clearly against the weight of the evidence. The plaintiff is unsupported in her story and is contradicted by four witnesses, two of whom are disinterested. While actions of this kind, as a rule, are peculiarly for the jury to determine, yet when the evidence is overwhelmingly against any unlawful detention and tends very strongly to show that the plaintiff was the culprit instead of the defendants, we are impelled to intervene to prevent the defendants being mulcted in damages unjustly."

Here the record shows that plaintiff had confessed in writing to a state of facts constituting a felony. She was very fortunate to escape criminal prosecution, to say nothing of asking a civil court to tax her employer in damages because it sought in a lawful manner to elicit from her facts relating to her criminal conduct. Can it be truthfully said from the testimony presented that the plaintiff possessed a reasonable ground for apprehension

that her liberty would be restrained had she attempted to leave the room? If the plaintiff were seized with such an apprehension, under the facts it would not be a reasonable one. She was told by no one that she could not leave the room, neither did any one attempt to stand in the doorway or to keep her from departing. The fact is, from her own testimony, the manager of the store told her to go home and compose herself and come back the next day. She could expect no more courteous conduct. Mere displeasure or distasteful company in no sense can be made the basis of an action for false imprisonment. The plaintiff made no physical attempt nor exhibited any intention of leaving the room, and all the circumstances indicate that had she done so she would have been able to depart without physical interference. We cannot believe that she had any reasonable ground to fear that force would be resorted to in the event that she undertook to depart. At the request of Mr. Sellers she left the room with the request that she return the next day. She never complied with that request and never came back to the place of employment; the most natural course of conduct for one who had confessed to the misappropriation of money belonging to her employer, and especially where her employer was seeking reimbursement for the defalcation. At the time plaintiff complains of the alleged restraint she was employed by the defendant Sears-Roebuck Company. The interview the employer had with the plaintiff was a highly proper one. It had evidently suspected the plaintiff was misappropriating funds and the only way it could determine the matter was through an interview of this character. This interview brought to light confessions of many more embezzlements than were previously known to her employer. The conduct of the employer in so doing was not improper and should not be, and is not, denounced by the law.

In *Weiler v. Herzfeld-Phillipson Co.*, 189 Wis. 554, which was a case very similar in fact to the case at bar, the court said:

"The sales slips of the plaintiff were brought from the office and carefully scrutinized by Mr. Carter and the plaintiff. This undoubtedly occupied a considerable length of time, but, at any rate, false imprisonment cannot be predicated upon the length of time plaintiff was in the office, in view of the fact that during all of such time she was an employee under compensation. The subject of the interview was a highly proper one, and had a direct bearing upon the relations existing between the parties. It cannot be said that her detention in Mr. Carter's office was unlawful, and the circumstance cannot be held to constitute false imprisonment unless there was something unlawful with reference to the manner of detention. According to plaintiff's own testimony she made no effort to leave the room, except on two occasions, when she arose from her seat and inquired if she might go, and she was told 'No,' to sit down. We discover nothing unlawful or improper in such a response to such an inquiry addressed by an employee to an employer under such circumstances. It may be assumed that plaintiff was not enjoying the interview, and that she desired to be relieved therefrom. However, as long as she remained an employee she was under the directions of her employer, and, if he had not yet completed the interview, it is difficult to find anything improper in his continuance thereof."

To announce a doctrine that a situation such as the one presented by this record is sufficient upon which to predicate an action for false imprisonment and make the employer answerable in damages would not only materially impair the machinery for the ascertainment of truth, but also would greatly interfere with the enforcement of criminal law. Should a police officer or detective or other enforcement officer be held legally answerable in damages each time he attempted to examine one suspected of a crime, it would destroy one of the most effective instruments in the administration of criminal justice.

From the whole record we conclude the interview with the plaintiff from which she claims the false imprison-

ment arose was a very proper and legal interview, and that she was not unlawfully restrained of her liberty. The burden was upon the plaintiff to establish by a preponderance of the evidence facts sufficient to constitute false imprisonment. This she failed to do. No other ground for reversal need be discussed. We hold the court erred in overruling the defendants' motions for a directed verdict, and the judgment is therefore reversed and the cause remanded.

REVERSED.

DAY, J., dissents.