PANISKO, RESPONDENT, v. DREIBELBIS, APPELLANT.

(No. 8,270.)

(Submitted March 5, 1942. Decided April 27, 1942.)

[124 Pac. (2d) 997.]

*Mr. F. C. Fluent,* for Appeallant, submitted a brief and argued the cause orally.

*Mr. Harlow Pease* and *Mr. J. F. Emigh,* for Respondent, submitted a brief and argued the cause orally.

HONORABLE R. M. HATTERSLEY, District Judge, sitting in place of MR. CHIEF JUSTICE JOHNSON, disqualified, delivered the opinion of the court.

The defendant, Louis Dreibelbis, is engaged in conducting a retail mercantile business in Butte, Montana, under the fictitious name of Dreibelbis Music Company. The amended complaint alleges in the first cause of action that prior to November 16, 1938, the plaintiff had been employed as a clerk and musician for more than four years in the place of business of the defendant; that on November 11, 1938, defendant and another person named Green, acting in concert, called plaintiff from her place of employment to a private and sound-proof room in the building wherein the business was conducted, and was there imprisoned, detained and restrained of her liberty against her will for a period of more than two hours; that the imprisonment, detention and restraint was accomplished by the defendant and said Green by threats to prosecute and convict the plaintiff of a felony and to put her in a penitentiary, and by rough, angry, loud and insulting language used toward her by defendant and said Green; that defendant and Green were both large, powerful and robust men, and plaintiff a frail, weak girl; that plaintiff was greatly frightened and intimidated and her will power overcome, and that she was compelled to submit and did submit, and against her will remained in the room as stated; that they there accused her of having embezzled and appropriated to her own use a portion of the money received by her from the sale of merchandise belonging to the defendant; that by threats and intimidation plaintiff's will power was overcome, and she was compelled to write, sign and deliver to the defendant, under the direction and domination of the defendant and Green, a certain writing, the exact words being unknown to her, the words

of which were dictated to her by said parties, which writing in substance stated that the plaintiff did confess she had stolen from defendant certain sums of money, which writing was wholly false and concocted and dictated by defendant and Green, and which she, when subsequently released from the duress and compulsion of said parties, repudiated, and demanded return of the same, but without success; that by reason of the gross insults aforesaid, plaintiff suffered great humiliation and distress of mind and so continues to do; that by reason of the acts aforesaid plaintiff was damaged in the sum of $15,000; that the said acts were done by defendant and Green wilfully, wrongfully, unlawfully, maliciously and oppressively; plaintiff demanding $15,000 actual damages and $5,000 exemplary damages.

The plaintiff having elected to proceed upon her first cause of action contained in the amended complaint as further amended at the close of the entire case, the second cause of action was ordered dismissed by the court and need not be considered further, except as hereinafter mentioned.

The defendant answered, denying the material allegations of the amended complaint, and for an affirmative defense, after admitting that plaintiff delivered to him a written statement setting forth certain sums of money which she had embezzled from the defendant, alleges that the writing was voluntarily made by the plaintiff and that it was and is true, defendant further admitting that sometime thereafter plaintiff demanded return of the paper.

The testimony shows without dispute that on November 11, 1938, the defendant conducted and operated a retail mercantile business in Butte, Montana, under the fictitious name of ''Dreibelbis Music Company;'' that on and prior to November 16th of the same year plaintiff was employed by defendant as a clerk and musician and had been so employed for more than four years; that her duties were to sell sheet music, to order sheet music and phonograph records in the music department and to help wait on customers in other departments of the store; that

the personnel of the store at the time consisted of about ten employees, including the manager, of whom about seven had access to the cash register; that the plaintiff at this time was frail, weighing ninety-six pounds, and that she had a good reputation for honesty and integrity.

The evidence further shows that about October 28, 1938, defendant entered into a contract with Riggeway Audit, Incorporated, for an "audit" of the music store during November, 1938, upon the agreed fee of $30, and fifty per cent, of all recoveries made; that such "audit" was conducted by one Charles T. Green as "auditor", with a crew of eight or ten men. Mr. Green's duties as such "auditor" included the questioning of employees, which had been a weekly occurrence with him for fifteen years; that on November 11, 1938, when plaintiff returned from lunch, defendant, who was on the mezzanine floor in the store, called plaintiff and asked her to come upstairs with him. She followed and entered one of the corner rooms used by people who wanted to play music and not be heard outside. There was another "gentleman" in the room whom she did not know; that defendant introduced her to this man who later became known to her as Mr. Green. After a few preliminary questions this man started pounding the table, accusing her of discrepancies and stating that he could prove that she had gotten three hundred dollars and some cents, mentioning a definite sum, since she had been working there; that she had been taking the money from the store ever since she had been working there, and this constituted grand larceny; Green was very loud and noisy, "pushed his face" toward her and was sort of bellowing, saying that he could send her to the penitentiary for what she had done; that he had a lot of witnesses to prove it, that it was a penitentiary offense, and she would be sent to the penitentiary if she did not admit that she took the money. When she started up and said "I beg your pardon," he waved her down and started telling her again that she would have to go to jail. He kept repeating to her that it was a penitentiary offense and she would be sent to jail. When she tried

to speak on several occasions he kept interrupting and stopping her by blustering and waving his hand and "pushing his face" toward her, talking louder than she could, and finally stating if she admitted she took the money and signed a paper to that effect, he would tell her what to write, no one would know it and it would be a secret, and defendant and he, Green, would be the only two people who would ever know about it. Plaintiff testified she was terribly frightened because it sounded to her if she made a move, he would call the police and she would be sent to jail; that she could see the penitentiary in front of her. She started to cry, did not have a handkerchief and no one gave her one. There was no pause in the talk so she could get control of herself. Plaintiff was asked in the course of the conversation which she could remember up to the point where she started to cry, but could not remember all of them. After showing her a cash slip, Green stated that several days previous a lady had come into the store and bought sheet music for $1.50 and right after her a man had purchased saxophone reeds, this being the transaction Green claimed she did not ring up.

It might be well to state at this point that the evidence shows clearly by the cash register ribbon and by the circumstances that this item for the saxophone reeds was deposited in the cash register and the sale recorded either by plaintiff or by defendant's bookkeeper.

After showing her the cash register slip, according to plaintiff's testimony, Green became very angry and started pounding the desk and to shout and tell her if she did not admit that she took the money and write this note or statement he was going to help her write, she would be sent to the penitentiary. She testified that she then broke down and wrote the statement he dictated to her. This statement was dictated in the presence of the defendant. Every time she wanted to get up and go, or looked as though she wanted to, either leave or say something in her defense, Green would shout "You're going to jail, I have witnesses to prove all this." She did not have time to ask to leave the room; she got up and Green made her sit down again.

She related other circumstances showing her confused state of mind and her distress at the time of making the written statement. She felt it was a frameup but that Green could prove something that did not happen; she was scared to death and did not try to go out of the room. The witness related other facts which occurred after the incident of November 11, 1938, including her demand for the return of the written statement referred to and her failure to obtain the same. Sufficient of the evidence on the part of the plaintiff has been related here fully to support the allegations of her amended complaint.

Upon the submission of the case to the jury upon the pleadings and evidence as stated, a unanimous verdict was returned in favor of the plaintiff for $1,500 actual damages and $500 exemplary damages. Judgment was rendered in accordance with such verdict, and thereafter motion for new trial was denied by the trial judge.

It is first contended by defendant that the evidence was insufficient to justify the verdict or the judgment rendered in the case. The case of *Kroeger* v. *Passmore*, 36 Mont. 504, 93 Pac. 805, 14 L. R. A. (n. s.) 988, is directly in point. It is there stated on page 509 of 36 Mont., and on page 807 of 93 Pac. in discussing false imprisonment: ''All that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard.'' (See. also, *Robinson & Co.* v. *Greene*, 148 Ala. 434, 43 So. 797, and *Dillon* v. *Sears-Roebuck Co.*, 126 Neb. 357, 253 N. W. 331-335.)

The evidence in the instant case is sufficient under the ruling in the case of *Kroeger* v. *Passmore*, just cited, to present the issue of false imprisonment to the jury. That jury by its verdict decided such issue in favor of the plaintiff, and the trial judge by his denial of the motion for a new trial, approved the verdict of the jury. Both the trial jury and the judge presiding at the trial were in position properly to weigh the evidence of the witnesses on the witness stand. There was sufficient evidence to warrant the submission of the issues to

the jury, and this court will not interfere with its verdict and the judgment thereon.

The damages were not excessive. "In this state it rests wholly ██ within the province of the jury to fix the amount of damages, both compensatory and exemplary, 'and, unless its determination appears to have been influenced by passion, prejudice, or some improper motive, or unless the amount is outrageously disproportionate, either to the wrong done or the situation or circumstances of the parties, the court will not generally interfere with the verdict.'" (*Johnson* v. *Horn*, 86 Mont. 314, 283 Pac. 427, at page 429, citing *Cornner* v. *Hamilton*, 62 Mont. 239, 204 Pac. 489, 491. See, also, *Hunt* v. *Van*, 61 Mont. 395, 202 Pac. 573; *Halliburton-Abbott Co.* v. *Hodge*, 172 Okl. 175, 44 Pac. (2d) 122; *Dillon* v. *Sears-Roebuck Co.*, supra.)

The jury admittedly were correctly instructed as to the law in this case, and there was sufficient evidence of false imprisonment, as defined by such instructions, to warrant the jury in finding as it did by its verdict.

There was no error on the part of the trial judge in denying ██ ██ defendant's motion for a directed verdict as to both causes of action of the plaintiff's amended complaint, as the evidence was sufficient for the consideration of the jury as to the first cause of action, and the court in effect granted defendant's motion as to the second cause of action by withdrawing it from the consideration of the jury. Nor was there any error in permitting the plaintiff at the close of the entire case to amend her amended complaint. It was within the sound discretion of the trial court to grant such amendment, and we find no abuse of discretion in this regard.

The judgment is affirmed.

ASSOCIATE JUSTICES ANGSTMAN, ERICKSON, ANDERSON and MORRIS concur.