Argued September 12, affirmed September 20, 1961

ROBERTS *v.* COLEMAN ET AL

365 P. 2d 79

*Al J. Laue,* Salem, argued the cause for appellant. On the brief were Williams & Skopil, Salem.

*C. Parker Gies,* Salem, argued the cause for respondents. With him on the brief were Lewelling & Gies, Salem.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL, GOODWIN and BRAND, Justices.

BRAND, J.

This is an action for false imprisonment brought by the plaintiff Judy Roberts, a minor, by her guardian ad litem, against the defendant Payless Drug Store, a corporation, and the defendants Coleman and Kremer, individually, and as agents of the corporate defendant.

The answer contained a general denial.

The cause went to trial before a jury, and a verdict was returned in favor of the plaintiff and against all of the defendants, in the sum of $2,000. The defendants had each moved for a directed verdict, which motions had been denied. Thereafter they each moved for judgment notwithstanding the verdict, which motions were allowed, and the court entered judgment for said defendants. The plaintiff also assigns as

error an order of the trial court which withdrew from the consideration of the jury the plaintiff's claim for punitive damages.

Obviously the first question for determination on this appeal is whether the motion for directed verdict "should have been granted," thus authorizing the trial court to render judgment n.o.v. for the defendants. We now consider that issue. The defendant Payless Drug Store, hereafter called "Payless", operates a retail store in the city of Salem. The defendant Coleman is the store manager and the defendant Kremer, doing business as "International Business Audit", is a private investigator who is employed by Payless to check the honesty and efficiency of its employees. The plaintiff, Judy Roberts, was employed by Payless as a clerk from January 25, 1959 until October 25 of the same year, at which time she "quit." The incidents on which plaintiff bases her claim of false imprisonment occurred, according to her testimony, on September 1.

■ In determining the propriety of the judgment n.o.v. for the defendants, the evidence must be considered in the light most favorable to the plaintiff. *United Finance Co. v. Kliks*, 210 Or 288, 310 P2d 1103; *Clark v. Strain et al*, 212 Or 357, 319 P2d 940. Our question is whether there was any substantial evidence of a false imprisonment.

On the day in question, the defendant Coleman came to the sales floor and told the plaintiff that he wanted to see her in his office. The plaintiff voluntarily accompanied him to his office where she was introduced to the defendant Kremer. The ensuing interview lasted from 10:30 a.m. until 1:30 p.m., and related to her conduct as a clerk. Kremer called attention to a tape recorder which was on the desk

and asked her if she objected to its use. Plaintiff answered that she didn't mind it running and that "it doesn't bother me at all." The conversation was recorded from its inception until about 1:30, when the plaintiff wrote and signed a letter addressed to the defendant Coleman, wherein she confessed that she had repeatedly stolen from the firm. The tape which records the conversation was marked "Exhibit B".

Counsel for defendant, Mr. Gies, said to the court, "I understand the tape has been received in evidence by stipulation of counsel as defendants' Exhibit B." Mr. Williams, counsel for the plaintiff, said, "We have no objection." The tape was received in evidence. The tape was put on the machine and played in the presence of plaintiff and of the jury. The tape, together with a typed transcript of its contents, is before this court. It plainly shows the following statement by Kremer, "There is one thing, Judy, I want you to understand, is this, that office door there is wide open and you are free to leave at any time you wish. (Door opened and closed.)"

In her cross examination, which preceded the playing of the tape to the jury, plaintiff was asked the following question: "Didn't one or the other tell you you were free to go at any time you wanted to?" Answer: "No, sir, they did not." Immediately after the tape had been run before the jury the plaintiff was recalled by the defense as an adverse witness. Question: "You heard the tape. Did you hear on there where they told you at the start the door was open and you could leave?" Answer: "I heard that on there but I can plainly state that I don't remember them telling me that."

We now quote from the brief of the plaintiff-appellant, as follows:

"* * * At the outset it must be pointed out that within the first few minutes of the interview the self-styled 'old professional' (Record Tr 78) told the plaintiff that the door was open and that she was free to leave (Record Tr 6) * * *."

The above testimony is highly significant on the question of the alleged false imprisonment. By way of summary, we first have a categorical denial by plaintiff that she was told she could leave. We next have positive testimony of the defendants Coleman and Kremer that plaintiff was told she might leave at any time. Next follows the playing of the tape before the jury and within the plaintiff's hearing and her admission that she heard the statement but didn't remember that they had told her. Lastly, we have the admission of counsel. Under the circumstances we think her original negative statement is completely overcome. Without regard to the state of her memory, it conclusively appears and is admitted that she was notified that she might leave at any time.

We next consider whether there is any substantial evidence that the office door was locked during the interview. Plaintiff testified, "As far as I know it was locked * * *." Again, we quote: "Q Did you at all times while you were there *feel* that the door was locked? A Yes, I did." (Italics ours.)

Plaintiff had never been in the office before, never testified that anyone locked the door or that she examined the door to ascertain if it was locked. Persons entered and left the office from time to time but there is no evidence that anyone locked or unlocked the door. "As far as I know" does not disclose knowledge. The evidence is that the door will not lock

from the inside. We quote from the undisputed testimony of witness Holmes:

"Q Are you familiar with the door and the lock on the door?
"A I am.

"Q Does it have a lock on the door?
"A It has a lock, yes.

"Q Will that door lock from the inside?
"A No.

"Q Will it lock from the outside?
"A Yes.

"Q When someone is inside they just turn the knob and can freely go outside?
"A Yes, they can.

"Q That is all.

*"CROSS EXAMINATION BY MR. WILLIAMS:*

"Q Can you lock it from the inside so you can't get out?
"A No.

"Q You cannot lock it from the inside?
"A You lock it from the inside when you walk out and can't get back in.

"Q But it has a flip lock on the inside?
"A Yes, but it doesn't lock the inside.

"Q But you can set the lock from the inside?
"A Yes.

"Q That is all.

*"REDIRECT EXAMINATION BY MR. GIES:*

"Q When you turn the knob after setting the lock, the knob opens the door?
"A That is correct.

"Q So it has no way to lock it so three persons couldn't open it from the inside?
"A No."

The inescapable conclusion is that the plaintiff could not have been locked in.

We next quote other items of testimony on which plaintiff relies as evidence of false imprisonment: We quote questions by Mr. Gies:

"Q You consented to staying there?
"* * * * *

"A No, not actually. I didn't. I was there, yes, but I felt I had to stay, that I couldn't leave. Of course, they didn't say to sit right there and stay.

"Q You didn't even ask if you could go, did you?

"A No, but they kept insisting I had taken the money and not to tell anybody and I was going to stay until they got the truth.

"Q Did they ever use the words 'until they got the truth'?

"A No. In a sense-like they were."

Again, the plaintiff said, "I didn't ask if I could leave but I was still under the impression I couldn't."

Plaintiff expressly admitted that the defendants did not use any physical force or threaten her with physical force and that they did not at any time by words or acts indicate or suggest that she would not be free to go if she wanted to. The undisputed evidence is that the defendants never told the plaintiff she could not leave. In fact, at one time after plaintiff had made a denial of any failure to record a sale, Kremer said: "Q Then you want me to leave? "A No. No, * * *." Again, "Q * * * You want to consummate this meeting, call it finished? A No."

■ Liability for false imprisonment in a case of this kind may depend upon two separate questions, (1)

was there a confinement, and (2) if there was, did the plaintiff consent?

The general rule is set forth in Restatement of Torts, Vol. 1, § 35, et seq. We summarize the rules therein set forth. Were defendants directly or indirectly the legal cause of the confinement of the plaintiff within boundaries fixed by the defendants? Was the act, if any, intended to confine the plaintiff? Section 35(a). And was the plaintiff conscious of confinement? Section 35(b). Section 36(2) provides that the confinement is complete, although there is a reasonable means of escape, unless the other knows thereof, but it seems clear that the question of a known reasonable means of escape does not arise unless it is first shown that the defendant intended to confine the plaintiff. The act must be done with intent to confine and must be the legal cause of confinement. Section 37. The Restatement outlines four possible methods by which confinement may be accomplished, (1) by actual or apparent physical barriers. Section 38; (2) by compulsive physical force or submission thereto. Section 39; (3) by submission to a threat to apply physical force. Section 40; and (4) by assertion of legal authority. Section 41.

Plaintiff contends that there is a fifth way by which one may be falsely imprisoned, i.e., by submission to reasonably apprehended force, though no actual force be used or threatened. In support, plaintiff cites the case of *Bingham v. Lipman,* 40 Or 363, 67 P 98, in which case the trial court instructed as follows: "Submission to the threatened and reasonably apprehended use of force is not to be considered as consent to the restraint. * * *" This court held that the instruction was "proper." This is the ratio

decidendi of the case and in harmony with the Restatement. It will be noted that the reasonable apprehension is coupled in the instruction with the threat of force. The court added, however, that the instruction "is to the effect that submission to reasonably apprehended force is sufficient to constitute unlawful imprisonment, although no actual force may have been used or threatened; * * *." By this dictum we think that the court meant no more than that express threats are unnecessary if the words or conduct are such as to create a reasonable apprehension that force will be used for the purpose of effectuating the present confinement; in other words, threats may be implied by words or conduct. The authority cited by the court for its statement reads as follows:

"In order to constitute a false imprisonment it is not necessary that actual force be used, if a person submits to an apprehension that force will be used if he does not. If therefore, a man is restrained of his liberty by fear of a personal difficulty, or an apprehension of personal injuries, that may amount to a false imprisonment, it not being necessary, it is held, that a person so threatened should await the actual application of the violence; nor is his submission to the apprehended force a consent to or waiver of the detention or restraint upon the freedom of his will." 12 Eng and Am Encyc of Law, False Imprisonment, p 733.

"But in order to constitute an unlawful imprisonment where no force or violence is actually employed, the submission must be to a reasonably apprehended force, the circumstance merely that one considers himself restrained in his person not being sufficient to constitute a false imprisonment unless there is in fact a reasonable ground to apprehend a resort to force upon an attempt to assert one's liberty." 12 Eng and Am Encyc of Law, False Imprisonment, p. 734.

The illustration given in the quoted text is that of an officer acting under a void process. In such a case there need be no violence or verbal threat of imprisonment for the assertion of legal authority sufficiently justifies a reasonable apprehension that force will be employed for physical restraint. The case of apprehension by assertion of legal authority is covered in the Restatement, Section 41, supra. There may be other instances in which no express threat is made but which would still justify a reasonable apprehension of force, but clearly such apprehension must be caused by words or conduct amounting in substance to a threat of forceful confinement. The rule is well set forth in 22 Am Jur., False Imprisonment, § 13, pp 361-2. We quote:

"* * * But if no force is used, there must be a reasonable apprehension of force, which may exist by reason of the wrongdoer's assertion of legal authority; and if the words or conduct do not impose confinement upon the plaintiff or do not induce a reasonable apprehension *that force will be used to effect a confinement,* false imprisonment does not exist." (Italics ours.)

*Jester v. Lipman,* 40 Or 408, 67 P 102, also cited by the plaintiff is not in point. In that case plaintiff was actually arrested by the police and suffered undisputed confinement.

■ Plaintiff cites *Dillon v. Sears-Roebuck Co.,* 126 Neb 357, 253 NW 331. In that case there was actual physical force. The court said:

"* * * The essential thing to constitute an imprisonment is restraint of the person, which may be by threats as well as by actual force, and if the words and conduct are such as to induce a reasonable apprehension or fear of force, of disaster, or disgrace, a person may be as effectually

restrained and deprived of liberty as by prison walls.

" 'Any intentional conduct chargeable to defendant, that results in placing of a person in a position where he cannot exercise his will in going where he may lawfully go, may constitute false imprisonment.' " 253 NW 331, 335.

This language cannot be construed literally. A plain threat to cause disaster or disgrace or to prosecute in the future cannot of itself constitute imprisonment. If the defendant said, "I will disgrace and prosecute you if you do not remain here," it might effect a false imprisonment, but a mere threat to prosecute in the future certainly would not. It is only when such threats are relative to a present threatened confinement that they can be said presently to deprive one of liberty. It is the apprehension or fear by which a person is restrained of liberty that may accomplish a false imprisonment, not mere threats of future action.

*Halliburton-Abbott v. Hodge*, 172 Okla 175, 44 P2d 122, does not support the broad language of the Sears-Roebuck case. The court correctly said, "if the words and conduct * * * induced in the plaintiff a reasonable belief that resistence or physical attempts to escape the room or store would have been useless and futile, then it is nevertheless false imprisonment, regardless of the absence of physical restraint. * * *" 44 P2d at 125.

In *W. T. Grant Co. v. Owens,* 149 Va 906, 141 SE 860, there was direct testimony that plaintiff was told that if she left the office they would take her to jail and that she could go only if she confessed. The threat was geared to her present confinement

and was properly held to constitute false imprisonment.

In *Panisko v. Dreibelbis,* 113 Mont 310, 124 P2d 997, cited by plaintiff, the court said:

"* * * 'All that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard.' " 124 P2d 997 at 1000.

It is clearly indicated that it is the restraint which must be caused by words or acts, etc.

■ We think the correct rule is stated in *Parrott v. Bank of America Nat. Trust & Savings Ass'n,* 97 Cal2d 14, 217 P2d 89, as follows:

"* * * 'All that is necessary to make out a charge of false imprisonment is that the individual be restrained of his liberty without any sufficient complaint or authority therefor, and it may be accomplished by words or acts which such individual fears to disregard. * * *' " 217 P2d at 95.

Again, the court said:

"* * * The threat of force in an action for false imprisonment need not be express—it may be implied, Moffatt v. Buffums' Inc., 21 Cal App2d 371, 69 P2d 424; the threats may be by conduct or words, * * *." 217 P2d 89 at 94.

In all of these cases it seems clear that the threat, express or implied, must relate to the present detention, not to future events.

In *Jorgensen v. Pennsylvania R. R. Co.,* 25 NJ 541, 138 A2d 24, the court quoted with approval:

" 'The essential thing is the constraint of the person. This constraint may be caused by threats as well as by actionable force, and the threats

may be by conduct or by words. If the words or conduct are such as to induce a reasonable apprehension of force and the means of coercion is at hand, a person may be as effectually restrained and deprived of liberty as by prison bars. Unless it is clear that there is no reasonable apprehension of force, it is a question for the jury whether the submission was a voluntary act, or brought about by fear that force would be used. * * *' " 138 A2d 24 at 41.

The cases frequently fail to make clear the distinction between reasonable apprehension that a person will in the future be prosecuted for crime or will lose his job, on the one hand, or the reasonable apprehension of physical confinement by force, on the other. The quotation from 22 Am Jur, False Imprisonment, § 13, pp 361-2, supra, makes the distinction clear.

■ The first question is whether the plaintiff has presented any substantial evidence in support of the first requisite of a cause of action for false imprisonment, namely, that the act of the defendants was a legal cause of her confinement and was "intended so to confine" her. 1 Restatement of Torts, § 35(a), p 66. A careful consideration of all of the evidence compels the conclusion that no act of the defendants shows an intent to confine the plaintiff within the boundaries of the office. We summarize: She was told she might leave at any time; she was asked if she wanted to terminate the interview, and said "no." The door was not and could not be locked so as to prevent one from opening it from the inside. She never asked nor attempted to leave. No threat of force was made or was claimed to have been made relative to a duty to remain or freedom to leave. The interview was during working hours, for which she was paid. She went voluntarily to the office on re-

quest. She was asked, "Did they at any time, by either words or acts, indicate or suggest to you that you wouldn't be free to go if you wanted to?" Her answer was "No." Again, we quote: "Q So there wasn't anything they did that would give you the idea that you couldn't leave any time you wanted to, is that correct? A Well, I guess so."

The evidence wholly fails to indicate confinement by any of the four possible ways enumerated in the Restatement, (1) by physical barriers—(an unlocked door is not a physical barrier). (2) By physical force; (3) by threats of physical force, or (4) by asserting legal authority.

We find nothing in *Bingham v. Lipman,* supra, which is in conflict with these conclusions.

The fact that the girls in the outer office were instructed not to come into the office is no evidence that the plaintiff was forbidden to go out. When the employee requested that she be allowed to return to work because they were busy, defendant Coleman explained that the interview was not finished. This was no evidence of confinement. Of course, the evidence indicates that the plaintiff was emotionally disturbed, and may have apprehended that she might in the future be dismissed from her job or prosecuted for theft. Such apprehension on her part was reasonable, as the following facts indicate. A few minutes after the interview began, the plaintiff said, "I might have failed to report a sale." Again, speaking of discrepancies shown by the sales slips, plaintiff said: "I don't blame you for thinking I took it." Again, on page 20 of the 85-page tape recording, she admitted that she took some hose without having them charged to her, and knew it was wrong and would call a person a thief who would do such a thing. She said, "Up

to that point I had never stolen and then I just didn't feel right about it at all." Somewhat later plaintiff admitted wrongfully giving a discount to a friend on a sale, and giving discounts to other employees, knowing it was wrong. These admissions were volunteered, not being dependent on any evidence in possession of the defendants. Other admissions of theft as shown by the recording device on the cash register were later admitted.

The reasonable apprehension of future difficulty from admitted theft is not that kind of apprehension which is relevant on an issue of false imprisonment. We find no evidence of reasonable apprehension of present confinement by force, or threat of force, express or implied.

We approve the written opinion of the trial court. It thus becomes unnecessary to consider plaintiff's first assignment of error concerning the alleged right to have the issue of punitive damages submitted to the jury.

The judgment is **affirmed**.